# IN THE UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

_____

# Appeal No. 23-964

_____


CHRIS MONE,

*Plaintiff-Appellant*,

v.

NEW YORK STATE UNIFIED COURT SYSTEM

*Defendant -Appellee*.

_____

On Appeal from the United States District Court

For the Eastern District of New York

Civil Action File: 1:21-cv-06914

_____

APPELLANT'S OPENING BRIEF

_____

Chris Mone in *Propria Persona*

1216 Yawl Way

Venice, FL 34285

- 1 -

## PLAINTIFF-APPELLANT'S CERTIFICATE OF INTERESTED PERSONS

## AND CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, Appellant Chris Mone certifies that the following persons and entities are known to Appellant to have an interest in the outcome of this case or appeal:

1. Lisa M. Evans (Appellee's counsel)
2. Diane Gujarati (U.S. District Judge)
3. Catherine Jakubik (Appellee's counsel)
4. New York State Unified Court System (Appellee)
5. Chris Mone (*pro se* Appellant)
6. Craig E. Penn (Appellee's counsel)
7. Anthony Ralph Perri (Appellee's counsel)

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, Plaintiff-Appellant Chris Mone, hereby certifies that Plaintiff-Appellant has no parent corporation and no publicly held corporation owning 10% or more of its stock.

## STATEMENT REGARDING ORAL ARGUMENT

Appellant Chris Mone pursuant to Federal Rule of Appellate Procedure 34(a) and the Second Circuit Rule 34 1(a), does not request oral argument. The facts and legal arguments are adequately presented in the briefs.

**Table Of Contents**                                                         **Page**

Table of Authorities.................................…….............................…….........4

Statutes & Rules.................................…….................................….........4

Statement of Subject Matter and Appellate Jurisdiction...................................……….......5

Statement of the Issues Presented for Review  ……………………………………..……….5

Statement of the Case.................................…….....................................…….. 6

Statements of Fact.…...............................…...............................…....................8

Summary of the Argument…….................…...................................……....12

Argument.................................………………………..............…13

Conclusion.................................………………………..……….. 26

Certificates of Compliance and Service  …………………………………………….. 27

# TABLE OF AUTHORITIES

1) *Board of Trustees of University of Alabama v. Garrett*……………………………………....7, 19
    531 US 356 (2001)
2) *Brokamp v. James*……………………………………………………………………………21
    573 F. Supp. 3d 696, 707 (N.D.N.Y. 2021)
3) *City of Boerne v. Flores*………………………………………………………………………18
    521 US 507 (1997)
4) *Giordano v. City of New York*…………………………………………………………………23
    274 F.3d 740, 748 (2d Cir. 2001)
5) *Kozaczek v. New York Higher Educ. Servs. Corp*……………………………………………14
    503 F. App'x 60, 62 (2d Cir. 2012)
6) *Lapides v. Board of Regents of University System of Georgia*………………………………14
    535 US 613 (2002)
7) *New York State Court Clerks Ass'n v. Unified Court Sys. of the State of New York*……………16
    25 F. Supp. 3d 459 (S.D.N.Y. 2014)
8) *School Board of Nassau County, Florida v. Arline*…………………………………………24
    480 US 273 (1987)
9) *Seminole Tribe of Florida v. Florida*…………………………………………………………17
    517 US 44 (1996)
10) *Speaks v. Health Systems Management, Inc*…………………………………………………24
    No. 5:22-CV-00077-KDB-DCK, 2022 WL 3448649, at *5 (W.D.N.C. Aug. 17, 2022)
11) *Tennessee v. Lane*……………………………………………………………………………18
    541 US 509 (2004)

# STATUTES

28 U.S.C. §1291…………………………………………………………………………………5
28 U.S.C. §1331…………………………………………………………………………………5
42 U.S.C. §12101……………………………………………………………………………5, 17
42 U.S.C. §12102(3)(A)…………………………………………………………………………26
42 U.S.C. §12202……………………………………………………………………………7, 16
42 U.S.C. §12203(a)……………………………………………………………………....………27
42 U.S.C. §12112………………………………………………………………………………5

# REGULATIONS

29 CFR 1630.2 ………………………………………………………………………………5, 26

## STATEMENT OF SUBJECT MATTER AND APPELLATE JURISDICTION

The District Court had subject matter jurisdiction over this action under 28 U.S.C. §1331 because this Court has original and exclusive jurisdiction under Title I of the Americans with Disabilities Act of 1990 and the Americans with Disabilities Act Amendments Act of 2008; 42 U.S.C. §12101 and 42 U.S.C. §12112 as implemented by 29 CFR § 1630.

This Court has appellate jurisdiction under 28 U.S.C. §1291 because this appeal is from a final judgment.

On June 22, 2023, Judge Gujarati issued an order adopting Magistrate Judge Bloom's recommendation that the motion to dismiss filed by the New York State Unified Court System ("UCS") be granted and Chris Mone not be granted leave to amend.

The Notice of Appeal was filed with the Clerk of the District Court on June 28, 2023. This appeal is timely under FRAP 4 (a)(4)(B)(1).

## STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

The issues presented for review are the following: (1) whether Mone's claims under the ADA were barred by state sovereign immunity under the Eleventh Amendment; (2) whether Mone was disabled within the meaning of the ADA; and (3)

whether Mone's termination was retaliatory and not simply a standard disciplinary measure for non-compliance with a normal and lawful policy.

### STATEMENT OF THE CASE

On December 10, 2021, Chris Mone filed a complaint against his employer, UCS, for violations of the Americans with Disabilities Act Amendments Act ("ADA-AA") for discrimination and retaliation on the basis of disability.

On June 10, 2022, Mone filed an amended complaint. Therein, Mone argued that UCS's "Covid policy" demonstrates that it discriminated against him based upon a perceived disability, under the "regarded as" and "record of prong". When Mone objected to comply with the policy's measures, such as testing and vaccination, UCS continued to impose them without first conducting an individualized assessment to determine if he was a direct threat. UCS also retaliated against Mone by interfering with his rights, imposing punitive measures, removing him from scheduled work-shifts, falsely declaring him unfit for service and ultimately terminating his employment, which is prohibited under the ADA-AA.

On August 4, 2022, UCS filed a motion to dismiss Mone's amended complaint. Therein, it argued that the Court should dismiss the amended complaint because (1) non-consenting States may not be sued in federal court by individuals under the

Eleventh Amendment to the Constitution; (2) the complaint failed to state a claim for disability discrimination or retaliation; and (3) the amended complaint was frivolous.

On September 15, 2022, Mone filed a response to UCS's motion to dismiss and argued that it had no immunity under the Eleventh Amendment because: (a) Congress waived immunity under Section 12202 of the ADA-AA of 2008; (b) UCS consented by receiving federal funds, employing ADA personnel; and publishing its commitment to comply with the ADA on its website; (c) UCS consented by making an established appearance in the proceeding; and (d) the facts that gave rise to the complaint were based upon policies implemented by UCS which are not legitimate or rational. Further, Mone argued that he sufficiently pled the elements of both claims of disability discrimination and retaliation.

On October 4, 2022, the District Court entered an order referring the motion to dismiss to Magistrate Judge Lois Bloom for a Report and Recommendation, which was filed on March 22, 2023. Therein, Magistrate Judge Bloom recommended that the District Court should grant UCS's motion to dismiss Mone's amended complaint.

The Magistrate Judge reported that the District Court lacked subject matter jurisdiction to adjudicate Mone's claims under the ADA because they were barred by state sovereign immunity under the Eleventh Amendment. Magistrate Judge Bloom argued that UCS was immune from Mone's claims regardless of the relief he sought because it had not waived its immunity by appearing in the lawsuit or by filing motions

to dismiss. Additionally, the Magistrate Judge reported that the Supreme Court held in *Garrett* that Congress did not validly abrogate States' sovereign immunity for claims under Title I of the ADA and the ADA Amendments Act of 2008 did not overrule this holding.

Moreover, Magistrate Judge Bloom reported that, even assuming UCS had consented, Mone's amended complaint failed to state a claim for discrimination and retaliation and therefore, UCS's motion to dismiss should be granted.

On June 22, 2023, the District Court entered an order adopting Magistrate Judge Bloom's recommendations and dismissed Mone's complaint without leave to amend.

On June 28, 2023, Mone filed a Notice of this Appeal. On June 30, 2023, the court docketed the appeal.

## STATEMENT OF FACTS

Chris Mone was employed as a Peace Officer/Court Officer in the UCS for over 20 years. On September 1, 2021, he received a memorandum titled "Mandatory Testing Program" signed by the Chiefs of Operations and Administration, which established obligatory weekly testing; required employees to enter a record of test results on the USC Sharepoint site; and coerced employees to get a "Covid vaccine", which are EUA injections[1], and share "vaccination status" via the UCS Employee web

---

[1] These injections are under Emergency Use Authorization, and come with conditions of informed consent and right of refusal.

portal. The memo also detailed harassing measures to be meted out by supervisors and threatened employees with not being allowed to work if they did not submit to the new policy. (*Aff*. ¶¶ 9-10; Exhibit A-1)

On September 8, 2021, Mone sent a letter to Lawrence Marks, Deputy Chief Judge in which he discussed the discrimination he was experiencing and mentioned that their Court Officers Union needed to be included in any policy-making decisions. (*Aff*. ¶ 11; Exhibit A-2)

On September 10, 2021, Mone received a "Vaccine mandate" memo signed by the Chiefs of Operations and Administration, which stated that Mone must receive an experimental injection treatment[2] by September 27, 2021 or his job would be at risk and he would likely be fired. This memo showed that  UCS was responding to Mone as if he was a "direct threat" of contagious disease, however UCS was not relying on any medical diagnosis of Mone.  The memo further showed that UCS was imposing an experimental medical treatment as a new condition of employment and threatening Mone with termination if he did not receive this treatment. The memo significantly **did not** contain any information about the experimental injection treatment which would assist Mone in giving informed consent (ie; a risk/benefit analysis, a notice of the right of refusal because the treatment was classified as experimental). (*Aff*. ¶ 12; Exhibit A-3)

---

2    A novel mRNA injection that neither claimed to prevent transmission of the COVID flu or to provide immunity to it, it was simply claimed to lessen symptoms of the COVID flu if the user developed such a condition.

On September 10 and 14, 2021, Mone gave several agents of UCS a letter titled "Notice of Discrimination and Harassment based upon Disability" which claimed that UCS was assuming Mone was a direct threat of a contagious disease without any objective evidence and Mone was putting UCS on notice that this qualified as discrimination under the ADA for a "perceived" disability rather than an "actual" disability. He insisted that UCS recognize his rights to informed consent and right to refuse experimental medical treatments. He was thorough and mailed or emailed this notice to several UCS agents including the Chiefs of Operations and Administration, Carolyn Grimaldi in Human Resources and Eva Moy in the Office of Managing Inspector General for Bias Matters (OMIGBM). Mone asked both offices to create a file for the purpose of documenting the discrimination, harassment and retaliatory threats of termination if he did not receive the experimental medical treatment for a condition he had not been diagnosed with. (*Aff.* ¶¶ 13-15; Exhibits A-4a, A-5a, A-5b)

UCS representatives simply denied perceiving Mone as a direct threat of deadly contagion. Eva Moy, OMIGBM, even claimed that her office was not responsible for processing employee discrimination claims and did not have jurisdiction to do so. Mone asked to be directed to an employee designated to handle ADA issues but he received no response. (*Aff.* ¶¶16-19; Exhibits A-6, A-7)

On September 20, 2021, Mone filed a Charge of discrimination and harassment with the EEOC. He sent a copy to Eva Moy, OMIGBM and Carolyn Grimaldi, Human

Resources. Both Ms. Grimaldi and Ms. Moy refused to process or investigate Mone's complaint of discrimination. (*Aff*. ¶¶ 20-21; Exhibit A-9)  No agent for UCS responded to Mone by doing an intake. All of the agents Mone contacted refused to assist him, and there was no administrative remedy made available to him. (*Aff*. ¶¶ 22-25)

On September 28, 2021, Mone reported to work and was handed a letter by his Lieutenant John Marsh stating that Mone was classified as  "unfit to serve" and "non-compliant" and would not be allowed to work and he was told to leave the premises. Mone was barred from returning unless he received the experimental injection treatment. This adverse action confirms that UCS both perceived Mone as a "direct threat" of contagion and was punishing him for refusing to get the experimental treatment despite being fully aware of Mone's valid reasons.  There was no end-date to when UCS would cease perceiving Mone as a threat or would cease classifying him as too impaired to work because he had not received "treatment" for the hypothetical impairment.  Thus, Mone was effectively terminated on this date. (*Aff*. ¶¶ 26-27; Exhibit A-12)

On September 29, 2021, in an attempt to avoid being deemed "non-compliant" or "unfit for service", Mone emailed a notice titled "Invocation of Rights under the Americans with Disablties Act" to several UCS representatives, wherein he claimed his rights to informed consent, to the protection of the ADA, and to refuse experimental injections or participation in a clinical trial. (*Aff*. ¶ 28; Exhibit A-13)

- 11 -

On October 4, 2021 the New York State Court Officer Association sued and was granted a temporary restraining order effectively putting the office of court administrations mandate on hold. Mone was able to report to work October 5, 2021 after being barred from the premises since September 28, 2021. (Aff. ¶ 29)

Mone noticed there were irregularities regarding the process he started at the EEOC, but he finally received his Right to Sue Letter on December 7, 2021. (*Aff*. ¶¶ 31-35; Exhibits A-14, A-15, A-16)

Mone sent another letter to several UCS representatives titled "Notice of Timely Response to Retaliation of Being Declared Unfit to Serve and/or Non-compliant Based on Disability". He stated that he had complied in a timely fashion to every request asking him to respond to the injection survey. Mone explained that he could not respond using the form letter because it only provided options for claiming a medical or religious exemption, which he considered an interference with his rights protected by the ADA. Mone was responsively objecting to the injections on the basis of rights protected by the ADA since his employer was regarding him as disabled. Mone asked for his objection to be entered into the portal since he was unable to do so. He also stated that he was fit for work and that he had complied with all requests for information about his status or objection to the EUA injection requests. However, he received no replies. (*Aff*. ¶36; Exhibit A-17)

## SUMMARY OF THE ARGUMENT

Mone argues that UCS has already consented to suit by its acceptance of federal ADA funding, salaried positions for ADA staff, and its commitment to ending discrimination in the workplace and in the public court facility itself. Additionally, UCS has made an established appearance in this case as evidenced by the years of litigation. Mone is also suing for injunctive relief and to be made-whole in addition to requesting punitive or private damages.

Furthermore, Mone argues that he is disabled within the meaning of the ADA and his firing by UCS was, in fact, retaliatory. Therefore, he successfully stated claims of disability discrimination and retaliation under the ADA.

**ARGUMENT**

**I. Mone's claims under the ADA are not barred by state sovereign immunity under the Eleventh Amendment.**

The District Court held that it lacks subject matter jurisdiction to adjudicate Mone's claims for employment discrimination and retaliation under the ADA because they are barred by state sovereign immunity under the Eleventh Amendment, regardless of the relief sought. Judge Gujarati held that Mone's arguments –that UCS waived its immunity and Congress abrogated sovereign immunity by enacting the ADA– failed. The standards of review are judicial error and abuse of discretion subject to *de novo* review.

**A. UCS waived immunity and consented to be sued for ADA violations.**

The District Court held that UCS was a part of this trial because Mone named it as defendant, not because of any voluntary act, arguing that UCS did not remove this case from state court to federal court like in *Lapides v. Bd. of Regents of Univ. Sys. of Georgia*. Judge Gujarati argued that UCS had not waived Eleventh Amendment immunity to plaintiff's ADA claims by appearing in these lawsuits or by "filing motions to dismiss," based on *Kozaczek v. New York Higher Educ. Servs. Corp.*, 503 F. App'x 60, 62 (2d Cir. 2012) (summary order). However, this is not a binding precedent on this Appellate Court since the case is classified as not precedential.

UCS came into court and *never* stated it was making a limited appearance just to answer the summons and claim immunity. On the contrary, they engaged in over a year's worth of litigation, as is evidenced by the record.

Mone argues that UCS had already consented to be sued for violations of the ADA because it consented to receive ADA funding and has a well-established commitment to end discrimination in the workplace and in the public court facility itself, which is published on its website. Being subject to the ADA is a condition on the grant of federal money. Additionally, UCS has infrastructure and a budget supporting this commitment. Why is UCS permitted to claim it is complying with federal law (even when it is not) but then for the same exact set of facts, claim it is somehow also

1
2

immune from liability for violating federal law? Why does its website

https://ww2.nycourts.gov/Accessibility/index.shtml state the following:

3

4
5

> "About the Americans with Disabilities Act (ADA)
> The Americans with Disabilities Act (ADA) is a federal law prohibiting
> discrimination against qualified individuals with disabilities. As defined
> by the statute, a person with a disability is one who has a physical or
> mental impairment that substantially limits a major life activity. The
> ADA also protects people who have a history of such an impairment, or
> who are regarded as having such an impairment.
> The New York State Unified Court System is committed to fully
> complying with the Americans with Disabilities Act by providing
> services, programs and activities in a way that assures equal and full
> accessibility for all court users.
> For more information about the ADA and the courts, please see our
> Reasonable Accommodations for Court Users and ADA
> Accommodation Request Process.
> For questions, concerns or assistance, please email:
> ADA@nycourts.gov."

6
7
8
9
10
11
12
13

14
15

And if UCS is not subject to the ADA, why does it have budgeting and a

16

financial allocation for an official ADA coordinator?[3] UCS has certainly received

17

federal funds; in fact, in addition to assorted federal funds it has been receiving from the

18
19

United States for decades[4], it has also recently been receiving MILLIONS of dollars in

20

the form of "disaster relief funds[5]". Additionally, the District Court is also participating

21
22

in the same bonanza and has the same inherent conflict of interest as does UCS and thus

23

is also not immune under the same principle.

24
25

26

27

28

---

3 This government employee can be contacted at New York State Office of Court Administration, Statewide ADA
Coordinator, 25 Beaver Street, 7th Floor, New York, NY 10004, e-mail: ada@nycourts.gov, (212) 428-2760
4 Unified Court System received $2.5 million since July of 2023; https://www.osc.state.ny.us/reports/covid-relief-program-tracker and state agencies have received $5 billion and NYS has received $35 billion.
5 Even though official medical examiner's records and DOH records show no evidence of any "pandemic" based upon
relevant mortality records. Nor does a "pandemic" allow the state to violate any laws, nor would such a condition give the
state any new legal authority or duty as it has been claiming via its it's "Covid policies".

USC has Services and/or other programs that actively support the rights of disabled individuals and are designed to address ADA claims before they materialize. However, in Mone's case, he documented that the very agents designated to assist him and address his claims refused to help and in fact were instrumental in his firing. Therefore, the UCS has waived immunity because they failed to properly address his claims at the administrative level and the government must be held liable when no adequate alternatives exist to find a remedy.

**B. Congress abrogated state sovereign immunity in ADA cases specifically.**

Congress abrogated state immunity from suit under the Eleventh Amendment when it enacted the ADA. This is specifically addressed in its Section 12202 which clearly establishes: "A State shall not be immune under the eleventh amendment to the Constitution of the United States from an action in Federal or State court of competent jurisdiction for a violation of this chapter. In any action against a State for a violation of the requirements of this chapter, remedies (including remedies both at law and in equity) are available for such a violation to the same extent as such remedies are available for such a violation in an action against any public or private entity other than a State."

The District Court cited *New York State Court Clerks Ass'n v. Unified Court Sys. of the State of New York*, which holds that because UCS and the Office of Court Administration are immune from FLSA claims, they are also immune from suits

seeking declaratory relief for FLSA violations. It also cited *Seminole Tribe of Fla. v. Florida*, in which the Supreme Court held that "Congress lacks power under Article I to abrogate the States' sovereign immunity from suits commenced or prosecuted in the federal courts". However, these cases are not applicable, since they refer to laws enacted pursuant to Congress' Article I power and not the ADA which is enforced under the fourteenth amendment. As per §12101 of the ADA, its purpose is "(4) to invoke the sweep of congressional authority, including the power to enforce the fourteenth amendment and to regulate commerce, in order to address the major areas of discrimination faced day-to-day by people with disabilities."

In *Seminole Tribe v. Florida*, the Supreme Court held that Congress had acted properly under its authority to pass legislation under the Fourteenth Amendment because the disabled are protected against discrimination by the Equal Protection Clause. The purpose of the ADA and the Rehabilitation Act is to prevent discrimination against the disabled. The Court stated that "[b]oth the ADA and the Rehabilitation Act [...] are within the scope of appropriate legislation under the Equal Protection Clause as defined by the Supreme Court. At the same time, neither Act provides remedies so sweeping that they exceed the harms that they are designed to redress. We therefore agree with the district court that both the ADA and the Rehabilitation Act were validly enacted under the Fourteenth Amendment."

In *Tennessee v. Lane*, the Supreme Court held that Title II of the ADA, as it applies to the fundamental right of access to the courts, constitutes a valid exercise of congressional authority under section 5 of the Fourteenth Amendment. The Court noted that when analyzing an Eleventh Amendment immunity issue, two questions must be resolved: (1) whether Congress unequivocally expressed its intent to abrogate; and (2) if so, whether it acted pursuant to a valid grant of congressional authority. The Court found that the ADA specifically provides for abrogation so it then applied the test set out in *City of Boerne v. Flores,* which found that legislation enacted pursuant to section 5 of the Fourteenth Amendment is valid if it had "a congruence and proportionality between the injury to be prevented or remedied and the means adopted to that end."

These conditions have been met. Under the Fourteenth Amendment, it is legitimate for Congress to protect individuals with disabilities from being discriminated and retaliated against on the basis of their disability in their workplace. The remedies available under the ADA are congruent and proportional to said end. According to the EEOC[6], the goal of the ADA is to put the victim of discrimination in the same position (or nearly the same) that they would have been if the discrimination never occurred. The employer will also be required to stop any discriminatory practices and take steps to prevent discrimination in the future. The remedies may

---

6 EEOC, Remedies for Employment Discrimination, available at: https://www.eeoc.gov/remedies-employment-discrimination

- 18 -

include back pay, front pay, compensatory damages, punitive damages, attorney's fees and costs, reinstatement, positive/neutral reference letter, reasonable accommodations, modified policies, ADA/disability training.  Notably the Act provides remedies that are not "... so sweeping that they exceed the harms that they are designed to redress". (*ibid*)

UCS argues that States may not be sued specifically for "monetary damages" under the ADA and cited the Supreme Court's ruling in *Board of Trustees of Univ. of Alabama v. Garrett.* "in order to authorize private individuals to recover money damages against the States, there must be a pattern of discrimination by the States which violates the Fourteenth Amendment[7], and the remedy imposed by Congress must be congruent and proportional to the targeted violation."

Garrett establishes the conditions under which even monetary damages may be pursued, it does not prohibit them.   The three conditions that the *Garrett* case makes clear: (1) the State must not use sovereign immunity to deprive an individual of privileges, property, due process or equal protection of the law; (2) money damages will only be allowed if a pattern of such abuse or discrimination has been established; and (3) the remedy imposed by Congress must be aligned to the violation.

---

[7] Fourteenth Amendment, Section 1. Substantive Due Process and Equal Protection Clauses. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

In the Mone case, he has fully claimed that his property rights were violated without the due process stated in the NYS public health laws and in the ADA when UCS adopted the flawed "Covid policy". In addition, a pattern of New York state violations of the ADA, due to implementing the flawed "Covid policy", have, in turn, violated the Fourteenth Amendment as has been established by the sheer number of court cases in the federal courts of New York and across the country filed by people whose employment was terminated as retaliation for not complying with discriminatory "Covid policies" that regarded them as direct threats and mis-classified them as still impaired for refusing non-job-related medical treatments, tests and disabilty related inquiries.

Even supposing Mone is precluded from receiving certain monetary damages, this does not preclude him from receiving badly needed injunctive relief or compensatory damages that simply return what was taken and do not count as "damages". Additionally, the Court is aware of the parameters of relief that it can grant, and it is not a reason to **dismiss a case** because a plaintiff asks for relief outside those parameters. The Court can easily grant compensatory relief such as reinstatement and the complete return of Mone's previous work status and benefits without "straining the coffers of the state" and this would certainly qualify as a remedy that in no way exceeds the harm he endured, which is the condition placed upon ADA relief. . Furthermore, injunctive relief is not monetary: the Court can order UCS to stop

- 20 -

violating the ADA and relevant public health laws and to make Mone whole again by acknowledging his property rights and by returning what was taken from him, that is, getting his job back or receiving back-pay; have his pension and benefits returned; and have his negative employment record expunged.

Judge Gujarati is perfectly capable of awarding such requests for relief that can be allowed (injunctive and compensatory) and may even award punitive damages and still not award damages that "exceed the scope of of the harm" Mone endured. Mone has asked for injunctive relief and to be made whole. In fact, it should be noted that UCS has refused to reinstate him, despite being ordered to do so by an Administrative Law Judge in the PERB decision and despite his thorough application for reinstatement which is on file with UCS.

The District Court broadly extrapolated *Brokamp v. James*[8], as if it supported the concept that all forms of relief, not just "money damages" were barred under state sovereignty however, *Brokamp* is not applicable since it does not refer to the ADA or any other statute which protects against violations of property rights of those with disabilities.

Based on the above, the District Court does have subject matter jurisdiction to adjudicate Mone's claims. Is the Court really saying that it will allow the State, as an employer, to harm individuals without any judicial review possible, and with no

---

[8] *Brokamp v. James* 573 F. Supp. 3d 696, 707 (N.D.N.Y. 2021)

administrative remedy or any other remedy available? What is the remedy? Due process requires a judicial forum, and if this is denied, Mone would like this court to explain what remedy he has.

## II. Mone was disabled within the meaning of the ADA[9].

The District Court misconstrued that the only support Mone offered for his contention that UCS regarded him as having a disability was the fact that he was subject to UCS's "Covid policy" requiring employee testing and, subsequently, vaccination. Yet, the actual definition of being regarded as disabled always includes identifying adverse actions taken because of the discriminatory perception. While the Court tries to misrepresent the facts, Mone satisfied the standard that the Court itself pointed out:

> "Under the ADA, an individual is 'regarded as' having a disability 'if the individual establishes that he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment'" (Report and Recommendations, p. 15)

Mone properly alleged that he was subject to prohibited actions because of his employer's perception that he was a direct threat and, when he refused treatments, that he was too impaired to work.(*Amend. Compl.* ¶ 15, 22, 38, 42-47, 53, 57-59).

UCS demonstrated a perception of Mone as impaired. UCS admitted that its "Covid policy" was intended to treat and prevent the spread of a deadly, contagious

---

[9] The District Court referred to Rehabilitation Act and the ADA equivalents, but it should be understood that Mone is suing under Title 1 ADA as the UCS is his employer.

disease. The policy assumed that every employee, Mone included, was a direct threat of such a disease and then UCS proceeded to require (experimental) treatments for the disease, and the policy is on record as treating all USC employees as if they were simultaneously at risk and posed a risk to the health of all other employees. Due to the fact that the policy significantly did not rely upon an individualized risk assessment or diagnosis, it is objectively true that the "Covid policy" was based upon the pure speculation and hypothetical belief that every employee of defendant was a direct threat and too impaired to work unless treated for the perceived impairment. Therefore, the policy assumes that all employees had an on-going and indefinite condition of impairment as long as they remained "untreated" by the mitigation measures outlined in the policy. This is UCS's perception, and as the Court correctly noted[10], "the decisive issue is the employer's *perception* of his or her employee's alleged impairment." *Giordano v. City of New York*, 274 F.3d 740, 748 (2d Cir. 2001) (citation omitted) (emphasis in original).

The "Covid policy" imposed a new qualification standard such that "treated" employees could work and "untreated" employees were subject to termination and other adverse employment actions since "untreated" employees continued to be misclassified as impaired. This is because the policy continued to regard the "untreated" employees as a continual direct threat of a deadly, contagious disease, despite UCS failure to rely upon any individualized risk assessment. Indeed, the policy

10  See Magistrate Judge Bloom's Report & Recommendations, p. 16.

imposes mitigation measures upon <u>all workers</u> without considering an individualized medical assessment of an employee's health.

The Court cites *Speaks v. Health Sys. Mgmt., Inc.*, to argue that "[r]efusing to get a vaccine required by an employer is not itself an 'impairment' of any sort. Rather, it reflects a personal *choice* by [plaintiff] that, while [plaintiff's] to make in this context, cannot be considered an impairment under the ADA." It should be clear by now that Mone's "unvaccinated status" is not the (pereceived) disability or (perceived) impairment he is claiming; rather it is the (non-job-related) medical treatment UCS wanted him to undertake because it perceived him a direct threat and wanted him to get treatment for the perceived impairment.

UCS also maintained records of "vaccine status" in order to implement adverse employment on the untreated. The purported "vaccine" requirement demonstrates very clearly that UCS regarded Mone (and all employees) as a direct threat of a contagious disease[11], and it demanded that he (and all employees) get the experimental injection treatment and it kept records of who received these treatments.

In his Response to UCS's Motion to Dismiss, Mone argued that "[t]here is no rational basis to act as if every single member of a community (e.g. all employees of the defendant) suddenly have the same exact illness (disability) and to conclude, without any examination of anyone, that everyone would benefit from the same exact

---

[11] It must be noted that the Supreme Court held in *School Board of Nassau County, Florida v. Arline*, 480 US 273 (1987), both the "contagious effects of a disease" and "the disease's physical effects" can impair the patient's ability to work, and therefore were considered as disabilities.

medical treatment." However, the District Court argued that Mone's objective description of UCS's actions was exactly why his claims were not "plausible". Why is it Mone's fault that his employer was acting irrationally? Why is his claim not "plausible" if what he describes is exactly what his employer did? This clearly demonstrates the District Court's bias against Mone. The District Court falsely stated that it empathized with Mone, but asserted without pointing to any facts, that he was simply "mistaken" in his "belief that COVID precautions instituted to protect public health translate into a belief or perception that all people are disabled." The Court did not address the issue Mone actually presented which is that he was regarded as a direct threat of contagion without objective proof and that this is the basis of his claim that the UCS acted irrationally.

The Court also assumes that "COVID precautions"[12] should be imposed even in the absence of a diagnosis showing medical necessity. The District Court ignored the fact that medical treatments are only prescribed once a condition has been established. Without an assessment establishing that Mone was contagious, there is no basis for the UCS to impose treatment upon him or anyone else. The District Court allowed UCS to unilaterally impose medical treatments upon all employees regardless of their medical condition. This is why Mone claims he was regarded as impaired: there was never an

---

[12] "COVID precautions" = experimental injection treatments, "Covid testing" replacing doctor's diagnosis, masking which is not shown to prevent viral transmission yet, if it did, should therefore protect the user. All treatments can simply be undertaken by any individual who wishes to use these measures. Mone does not need to undertake the treatments in order to make another individual's treatments work. That has never been a component of medical treatment.

objective assessment. In addition, neither UCS not the District Court pointed to a single public health law that established a legal duty of employers to "protect public health" with "COVID precautions".

The Court argued that Mone failed to allege "any details supporting how" the alleged impairments "substantially limit[ed] any major life activities," which they identify in their opposition as working, breathing, and thinking. However, Mone **is not required** to allege that the (perceived) impairment substantially limited him.[13] Under the circumstances of his claim, he is required to allege that UCS misclassified him a substantially impaired, which Mone has done. This concept is further emphasized in the statute outlining how a "regarded as" or perceived disability can be shown objectively. The standard for a "regarded as" disability claim requires the individual to establish that he has been "...subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." *42 U.S.C.S. § 12102(3) (A)*. Therefore, the Court incorrectly asserted that a showing of "substantial limitation" was required and the Court failed to focus on the adverse actions alleged which demonstrate the perception of the employer.

## III. Mone's firing was retaliatory.

---

13 To state a prima facie disability claim based on a "record of" a disability, a plaintiff must plausibly allege a "history of an impairment that substantially limited one or more major life activities when compared to most people in the general population, *or was misclassified as having had such an impairment.*" *29 C.F.R. § 1630.2(k)(2) (emphasis added)*

- 26 -

The District Court held that Mone's termination did not give rise to an inference of retaliation, notwithstanding that it followed shortly after his allegedly protected activity. Judge Gujarati stated that Mone's opposition to UCS's vaccine mandate as well as her September 20, 2021 EEOC charge occurred after defendant issued and distributed the vaccination policy memorandum on September 10, 2021. This is not only immaterial but untrue. Mone filed a letter on September 8, 2021 with Lawrence Marks opposing the recently announced testing policy. It is clear that the moment the "Covid policy" began to be rolled out, Mone opposed it. The Court held that from the moment the vaccine mandate was announced Mone risked termination if he failed to comply, and he was disciplined as a consequence of his failure to comply with the vaccine mandate, rather than as retaliation for his opposition to it. Judge Gujarati is using word salads to actively defend UCS. It is perfectly clear that Mone did not "comply" with the policy because he engaged in protected opposition to the policy on the basis that it violated his rights protected under the ADA. Clearly Mone's opposition results in non-compliance, especially when "compliance" requires an experimental injection tretament that cannot be undone.

Title I of the ADA prohibits retaliation against any individual who has "opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in any investigation, proceeding or hearing under the ADA." *42 U.S.C. §12203(a)*.

- 27 -

To state a claim for ADA retaliation, a plaintiff must allege that: (1) he engaged in an activity protected by the ADA; (2) the employer was aware of this activity; (3) the employer took an adverse employment action against him; and (4) a causal connection exists between the alleged adverse action and the protected activity.

Mone complied with this when he properly alleged that he opposed UCS's "Covid policy" because it contained several violations of the ADA without due process. He gave notice to his employer of this and put UCS on notice that he was being regarded as disabled and subjected to discrimination and harassment based upon disability.[14] It was directly because of his opposition, and simultaneous non-compliance, with the "Covid policy" that Mone was fired and there was no other reason.

However, the District Court is deliberately mislabeling UCS' retaliatory and punitive conduct against Mone as "disciplinary measures", as if he was being disciplined for being habitually late on the job, when the reality is that Mone was fired for opposing and not complying with a policy which he correctly identified as illegal, because it was discriminatory, which interfered with his rights, and imposed non-job-related medical examinations and experimental treatments upon him as a new condition of employment without any objective evidence or individualized risk assessment. Mone was not "disciplined", which pre-supposes the punishment is justly

---

[14] He expressed his opposition in a number of ways, including several written notices to his employer that he was being discriminated against and he filed an EEOC complaint.

meted out; UCS has no authority to compel experimental medical treatments upon its employees, the policy is illegal, and he was retaliated against because he opposed the policy and refused the medical treatments and fought for his rights through the civilized avenue of engaging the protection of the ADA to create a forum for claiming his rights. UCS refused to allow him access to any remedy and ignored his rights and its duty to uphold the ADA in exchange for $2,5 million in covid money. The Court apparently thinks this is perfectly accceptable and is even arguing for the defendant.

It must be noted that UCS did not deny imposing adverse actions on Mone. UCS did not deny Mone's following allegations: (1) that the purpose of the "Covid policy" was to treat and prevent the spread of a deadly, contagious disease; (2) that the policy regarded all "unvaccinated" employees as in need of further treatment; (3) that the policy itself was a "materially adverse change in the terms and conditions" of his employment because it imposed non-job-related medical inquiries upon him as a new condition of employment; and (4) that it fired Mone because he refused non-job-related medical inquiries and treatments.

The District Court ignored the fact that UCS's "Covid policy" was illegal.[15] It also materially and adversely changed Mone's terms and conditions of employment, without any prerequisite new legal duty or legal authority for UCS to impose it upon employees. The District Court fails to cite the source of any such authority. Even if

---

15 The District Court adopted the prejudicial narrative and terminology contained in the "Background" section of the Report & Recommendations: which claimed that UCS adopted "rules" and a medical treatment "mandate" instead of analyzing the legality of such a policy as Mone's claim demands.

there were evidence of a "global pandemic", that again did not give UCS any new legal duties or authority to impose its "Covid policy" measures on Mone. In fact, the employer-imposed "Covid vaccine mandates" have been stricken down by three separate rulings in New York Superior Courts.[16] And UCS has been specifically upbraided by the PERB ruling. It is axiomatic that the emergency declaration did not create a new legal authority or any new legal duty to impose the "Covid policy". This policy did not and cannot amend or repeal existing law, nor did it or can it countermand existing public health law[17] and disability law.

UCS's "Covid policy" imposed medical treatments which are classified by the FDA as experimental since they fall under an FDA Emergency Use Authorization period which amounts to a clinical trial phase; this classification includes two requirements: (1) right to refuse treatments, and (2) right to informed consent which must include a risk-benefit analysis. Neither of these conditions were met by UCS.

Moreover, the treatments were imposed without benefit of diagnosis, meaning the treatments were applied to every employee without the policy first requiring an individual assessment to determine if the employee actually had a medical condition that might benefit from receiving the treatments. This means that the policy was imposed based upon the hypothetical assumption that all employees should be treated.

Furthermore, UCS is imposing medical treatments as a new qualification

---

16 *Med. Professionals For Informed Consent v. Bassett,* 2023 N.Y. Slip Op. 23020*; Garvey v. City of New York* NY Slip Op 22335; and *Police Benevolent Ass'n of City of New York v. City of New York*, 2022 N.Y. Slip Op. 33185
17 specifically, Chapters 1.23 through 1.43 of the New York State Public Health Manual.

1   standard for employment which are not job-related because Mone is perfectly capable
2   of performing the essential functions of the job without using any of the treatment
3
4   measures. Finally, it is completely illogical to require Mone to take medical treatments
5   in order to make medical treatments work for others.
6
7          These significant allegations show that opposition is warranted and compliance is
8   actually disdainful. It is illogical for the District Court to argue that Mone was only
9   being disciplined for non-compliance. When has it been legal to be disciplined into
10
11  complying with an illegal and discriminatory policy that violates rights to bodily
12  integrity, informed consent, due process and to refuse experimental medical treatments?
13
14                                **CONCLUSION**
15         For the reasons herein the Court's decision constitutes an abuse of discretion and
16
17  is clearly erroneous and should be reversed.
18         WHEREFORE the appellant requests an order reversing the trial court's decision
19
20  and remanding it to trial court for further proceedings.
21  DATED this 15 day of August, 2023.                    _____
22                                                         Chris Mone, Appellant
23
24
25
26
27
28

- 31 -

**CERTIFICATE OF COMPLIANCE**

I, Chris Mone, do certify the following:

1. This document complies with FRAP 32(a)(7)(B) because, excluding parts of the document exempted by FRAP 32(f) this document contains 6,191words.

2. This document complies with FRAP 32 (a)(5) and (6) because this document has been prepared using Times New Roman font in 14-point.

**By:** CM

**CERTIFICATE OF SERVICE**

I, Chris Mone, hereby certify that a true and correct copy of the foregoing Opening Appeal Brief was duly served upon New York State Unified Court System's attorney Lisa M. Evans, at the address of NYS Office of Court Administration; 25 Beaver Street; New York, NY 10004, via electronic mail on this 15 day of August, 2023.

I further certify that a true and correct copy of the foregoing Opening Appeal Brief was duly served upon the United States Court of Appeals for the Second Circuit at Thurgood Marshall U.S. Courthouse, 40 Foley Square, New York, NY 10007, via electronic mail on this 15 day of August, 2023.

**By:** CM

- 32 -