# 23-964

## United States Court of Appeals for the Second Circuit

CHRIS MONE,

*Plaintiff-Appellant,*

v.

NEW YORK STATE UNIFIED COURT SYSTEM,

*Defendant-Appellee.*

On Appeal from the United States District Court
for the Eastern District of New York

## BRIEF FOR APPELLEE

BARBARA D. UNDERWOOD
  *Solicitor General*
MATTHEW W. GRIECO
  *Senior Assistant Solicitor General*
ANDREA W. TRENTO
  *Assistant Solicitor General*
    *of Counsel*

LETITIA JAMES
  *Attorney General*
  *State of New York*
28 Liberty Street
New York, New York 10005
(212) 416-8020

Dated: October 25, 2023

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ....................................................................iii

PRELIMINARY STATEMENT ............................................................. 1

ISSUES PRESENTED ........................................................................... 3

STATEMENT OF THE CASE ................................................................ 3

    A.    Factual Background ................................................................ 3

        1.    COVID policies of the New York State Unified
                Court System (UCS) ........................................... 3

        2.    Mone is disciplined for violating UCS's COVID
                policies ............................................................... 4

        3.    Mone files a complaint with the EEOC ............................ 7

    B.    The Proceedings Below ......................................................... 8

        1.    The allegations of the complaint. ..................................... 8

        2.    The report and recommendation on UCS's  motion
                to dismiss .......................................................... 9

        3.    The district court's order ................................................. 11

STANDARD OF REVIEW..................................................................... 11

SUMMARY OF ARGUMENT ................................................................ 12

ARGUMENT ....................................................................................... 13

i

**Page**

POINT I

THE DISTRICT COURT CORRECTLY CONCLUDED THAT MONE'S
CLAIMS UNDER THE ADA WERE BARRED BY THE ELEVENTH
AMENDMENT ............................................................... 13

    A.    Congress Did Not Abrogate the States' Eleventh
        Amendment Immunity for Claims Under ADA Title I. ......... 15

    B.    New York Has Not Waived Its Eleventh Amendment
        Immunity for Actions Under Title I of the ADA. ................... 18

POINT II

THE DISTRICT COURT PROPERLY DISMISSED MONE'S
REHABILITATION ACT CLAIMS ............................................ 22

    A.    Mone's Putative Rehabilitation Act Claims—Which He
        Disavows on Appeal—May Be Subject to Eleventh
        Amendment Immunity. .......................................... 22

    B.    Mone's Discrimination Claim Is Defective Because He
        Has Failed to Allege That He Has a Disability. .................... 24

        1.    Mone's complaint fails to plead that UCS "regarded"
            him as having a disability. ............................ 25

        2.    Mone's complaint fails to plead that he had a
            "record of" having a disability. ....................... 29

    C.    Mone's Retaliation Claim is Defective Because He Has
        Failed to Plausibly Allege That His Termination Was
        Retaliatory ...................................................... 32

CONCLUSION ..................................................... 36

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Absolute Activist Value Master Fund Ltd. v. Ficeto,*
677 F.3d 60 (2d Cir. 2012) ....................................................... 11

*American Atheists, Inc. v. Port Auth. of N.Y. & N.J.,*
760 F.3d 227 (2d Cir. 2014) ..................................................... 24

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) ................................................................ 11

*Baez v. New York,*
629 F. App'x 116 (2d Cir. 2015) .............................................. 16

*Board of Regents of Univ. of Wisc. Sys. v. Phoenix Int'l
Software, Inc.,*
653 F.3d 448 (7th Cir. 2011) .................................................... 19

*Board of Trs. of Univ. of Ala. v. Garrett,*
531 U.S. 356 (2001) ......................................................... 15-17, 21

*Catanzaro v. City of New York,*
No. 10-cv-1825, 2011 WL 335648 (S.D.N.Y. Jan. 25, 2011) .............. 33

*Chancey v. BASF,*
No. 23-40032, 2023 WL 6598065 (5th Cir. Oct. 10, 2023) ................. 25

*Civil Serv. Emps. Ass'n., Local 1000 v. New York State (Unified
Ct. Sys.),*
73 Misc. 3d 874 (Sup. Ct. Albany Cnty. 2021) ..................................... 6

*College Sav. Bank v. Florida Prepaid Postsecondary Educ.
Expense Bd.,*
131 F.3d 353 (3d Cir. 1997) .................................................... 19

*College Sav. Bank v. Florida Prepaid Postsecondary Educ.
Expense Bd.,*
527 U.S. 666 (1999) ............................................................... 18

**Cases**                                                    **Page(s)**

*Cuoco v. Moritsugu*,
  222 F.3d 99 (2d Cir. 2000) .................................................... 18

*D'Cunha v. Northwell Health Sys.*,
  No. 1:22-cv-0988, 2023 WL 2266520 (S.D.N.Y. Feb. 28, 2023) .......... 26

*Darby v. Childvine, Inc.*,
  964 F.3d 440 (6th Cir. 2020) ................................................. 26

*Davis v. New York City Dep't of Educ.*,
  804 F.3d 231 (2d Cir. 2015) ............................................. 29-30

*Dimps v. Taconic Corr. Facility*,
  802 F. App'x 601 (2d Cir. 2020) ........................................... 16

*Equal Emp. Opportunity Comm'n v. BNSF Ry.*,
  902 F.3d 916 (9th Cir. 2018) ............................................... 26

*Equal Emp. Opportunity Comm'n v. STME, LLC*,
  938 F.3d 1305 (11th Cir. 2019) ............................................ 26

*Gary v. Georgia Dep't of Hum. Res.*,
  323 F. Supp. 2d 1368 (M.D. Ga. 2004) .................................... 20

*General Elec. Co. v. Bucyrus-Erie Co.*,
  550 F. Supp. 1037 (S.D.N.Y. 1982) ....................................... 30

*Gollomp v. Spitzer*,
  568 F.3d 355 (2d Cir. 2009) ................................................ 14

*Gordon v. New York City Bd. of Educ.*,
  232 F.3d 111 (2d Cir. 2000) ............................................. 32-33

*Hargrave v. Vermont*,
  340 F.3d 27 (2d Cir. 2003) ................................................. 28

*Hilburn v. Murata Elecs. of N. Am., Inc.*,
  181 F.3d 1220 (11th Cir. 1999) ............................................ 31

**Cases**                                                     **Page(s)**

*In re Charter Oak Assocs.*,
    361 F.3d 760 (2d Cir. 2004) ............................................................. 19

*Johnson v. Mount Sinai Hosp. Grp., Inc.*,
    No. 22-cv-2936, 2023 WL 2163774 (E.D.N.Y. Feb. 22, 2023) ........... 34

*Jorgenson v. Conduent Transp. Sols., Inc.*,
    No. 22-cv-01648, 2023 WL 1472022 (D. Md. Feb. 2, 2023) .......... 31, 34

*Lapides v. Board of Regents of the Univ. Sys. of Ga.*,
    535 U.S. 613 (2002) ......................................................................... 19

*Levy v. Kansas Dep't of Soc. & Rehab. Servs.*,
    789 F.3d 1164 (10th Cir. 2015) .................................................... 20-21

*Librandi v. Alexion Pharms., Inc.*,
    No. 3:22-cv-1126, 2023 WL 3993741 (D. Conn. June 14, 2023) .... 28-29

*Lyons v. Legal Aid Soc'y*,
    68 F.3d 1512 (2d Cir. 1995) ............................................................. 24

*Mary Jo C. v. New York State & Loc. Ret. Sys.*,
    707 F.3d 144 (2d Cir. 2013) ............................................................. 17

*McGinty v. New York*,
    251 F.3d 84 (2d Cir. 2001) ............................................................... 19

*Mohegan Tribe v. Connecticut*,
    528 F. Supp. 1359 (D. Conn. 1982) ................................................... 19

*Morriss v. BNSF Ry.*,
    817 F.3d 1104 (8th Cir. 2016) .......................................................... 26

*Natofsky v. City of New York*,
    921 F.3d 337 (2d Cir. 2019) ............................................................. 35

*Nicolae v. Office of Vocational & Educ. Servs. for Individuals
    with Disabilities*,
    257 F. App'x 455 (2d Cir. 2007) ....................................................... 16

**Cases**                                                                    **Page(s)**

*Palmer v. New York State Off. of Ct. Admin.*,
   526 F. App'x 97 (2d Cir. 2013) ........................................................... 17

*Panzardi–Santiago v. University of P.R.*,
   200 F. Supp. 2d 1 (D.P.R. 2002) ........................................................ 20

*Santiago v. New York State Dep't of Corr. Servs.*,
   945 F.2d 25 (2d Cir. 1991) ................................................................ 17

*Sharikov v. Philips Med. Sys. MR, Inc.*,
   No. 22-cv-00326, 2023 WL 2390360 (N.D.N.Y. Mar. 7, 2023) ........... 34

*Shell v. Burlington N. Santa Fe Ry.*,
   941 F.3d 331 (7th Cir. 2019) ............................................................. 26

*Shklyar v. Carboline Co.*,
   616 F. Supp. 3d 920 (E.D. Mo. 2022) ................................................. 34

*Sista v. CDC Ixis N. Am., Inc.*,
   445 F.3d 161 (2d Cir. 2006) .............................................................. 28

*Slattery v. Swiss Reinsurance Am. Corp.*,
   248 F.3d 87 (2d Cir. 2001) ................................................................ 33

*Smith v. Hogan*,
   794 F.3d 249 (2d Cir. 2015) .............................................................. 24

*Sullivan v. Texas A&M Univ. Sys.*,
   986 F.3d 593 (5th Cir. 2021) ......................................................... 20-21

*T.W. v. New York State Bd. of Law Exam'rs*,
   996 F.3d 87 (2d Cir. 2021) ............................................................ 22-23

*Tafolla v. Heilig*,
   80 F.4th 111 (2d Cir. 2023) ......................................................... 32, 35

*Tennessee v. Lane*,
   541 U.S. 509 (2004) .................................................................... 16-17

| **Cases** | **Page(s)** |
|---|---|

*United States v. Diaz,*
  967 F.3d 107 (2d Cir. 2020) ................................................................ 35

*Williams-Moore v. Quick Int'l Courier, LLC,*
  No. 22-cv-3592, 2023 WL 6292540 (E.D.N.Y. Sept. 26, 2023) ...... 26-27

*Woods v. Rondout Valley Cent. Sch. Dist. Bd. of Educ.,*
  466 F.3d 232 (2d Cir. 2006) ................................................................ 14

**Constitutions**

U.S. Const., amend. XI .................................................................... passim

**Laws**

29 U.S.C. § 705 ...................................................................................... 24

42 U.S.C.
  § 2000d-7 ...................................................................................... 9, 20
  § 12102 ........................................................................................ 24-25
  § 12113 ........................................................................................ 27-28

29 C.F.R. § 1630.2 .......................................................................... 28-30

# PRELIMINARY STATEMENT

Appellant Chris Mone, formerly a court officer employed by the New York State Unified Court System (UCS), alleged that he experienced discrimination and retaliation in violation of Title I of the Americans with Disabilities Act (ADA) and section 504 of the Rehabilitation Act. Mone claimed that his refusal to be vaccinated against COVID-19 caused UCS to perceive him as disabled, and that his termination after his refusal to comply with UCS's vaccination policy was a form of retaliation.

The United States District Court for the Eastern District of New York (Gujarati, J.) dismissed Mone's claims under Title I of the ADA because they were barred by the State's Eleventh Amendment sovereign immunity. The court construed Mone's complaint to assert discrimination and retaliation claims under section 504 of the Rehabilitation Act, and dismissed those claims as well.

This Court should affirm. Mone's damages claims under Title I of the ADA cannot overcome UCS's Eleventh Amendment immunity, because Congress has not validly abrogated nor has New York waived immunity for such claims. And Mone has not otherwise named an appro-

priate defendant for seeking injunctive relief pursuant to *Ex Parte Young*, 209 U.S. 123 (1908).

Mone also fails to state a claim for discrimination or retaliation under the Rehabilitation Act (or under the ADA, to the extent that any such claims could overcome immunity). Mone's discrimination claim fails because his refusal to comply with workplace policies requiring all employees to be vaccinated against COVID-19 does not qualify him as disabled or perceived as disabled within the meaning of those statutes. And Mone's retaliation claim fails because the circumstances of his termination show that he was terminated for noncompliance with the vaccination policy itself, not because of his opposition to that policy or because of a protected activity such as filing a complaint. Indeed, Mone's admission that he was terminated *both* for failing to comply with the policy and for opposing the policy negates the but-for causation required for his claims.

## ISSUES PRESENTED

1.    Did the district court properly dismiss Mone's claims under Title I of the ADA on the ground that UCS was immune from suit in federal court from such claims pursuant to the Eleventh Amendment?

2.    Did the district court properly dismiss Mone's discrimination and retaliation claims under section 504 of the Rehabilitation Act for failure to state a claim?

## STATEMENT OF THE CASE

**A.    Factual Background**

**1.    COVID policies of the New York State Unified Court System (UCS)**

On September 1, 2021, UCS informed its judicial and non-judicial staff that on September 7, 2021, it would begin a mandatory COVID-19 testing program for employees who had not been fully vaccinated against COVID-19 (the "Testing Policy"). (Supp. App. for Appellee (S.A.) 29.) Employees who refused to be vaccinated and who refused to comply with the testing program would be excluded from the workplace and considered absent without authorization. (S.A. 32.)

On September 10, 2021, UCS informed its judicial and non-judicial staff that, effective September 27, 2021, that it would require all employees to be vaccinated against COVID-19 unless approved for an exemption due to medical reasons or sincerely held religious beliefs (the "Vaccination Policy"). (S.A. 36.) Employees who qualified for either exemption, or who had received only one of the vaccine shots as of the effective date for the policy, would be required to adhere to the testing program. (S.A. 36-37.)

### 2. Mone is disciplined for violating UCS's COVID policies

Appellant Chris Mone was a court officer of the respondent New York State Unified Court System (UCS) for more than 20 years. (S.A. 4.)

On September 8, 2021, Mone sent an email to Chief Administrative Judge Lawrence Marks expressing opposition to both the Testing Policy and the forthcoming Vaccination Policy. He claimed that the Testing Policy was discriminatory because it would only require testing of employees who were "unvaccinated or unwilling to disclose their medical status," and noted that the policies would not require testing of attorneys or members of the public who enter the courts at all. Mone also asserted

4

that the Vaccination Policy was impermissibly adopted without consulting or negotiating with his union, and that the policy was also "discriminatory." (S.A. 34.)

On September 10, 2021, Mone sent a letter to UCS's administrative leadership, Chief Judge Janet Difiore, Chief Administrative Judge Lawrence K. Marks, Chief of Administration Justin A. Barry, and Chief of Operations Nancy J. Barry, further alleging that the Testing Policy and Vaccination Policy were discriminatory and violated of Title I of the Americans with Disabilities Act. He contended that he was being impermissibly "regard[ed] . . . as having a disability" and then being "compel[ed] . . . to submit to your medical interventions without my consent." (S.A. 39.) On that same day, he sent a letter to UCS's Human Resources Director, Carolyn Grimaldi registering similar complaints, and asking that his complaint be maintained in his personnel file and kept confidential within the Department of Human Resources. (S.A. 41.)

On September 13, 2021, UCS's Chief of Administration, Justin Barry, responded to Mone's September 8 email to Judge Marks, explaining that both the Testing Policy and the Vaccination Policy were supported by CDC guidelines, and encouraging Mone to consult with his

own medical provider with about any concerns he might have with the vaccine. (S.A. 44.) On September 16, 2021, HR Director Carolyn Grimaldi responded to Mone's letter of September 10, advising him that his personnel file was not maintained by the Division of Human Resources, and in any event the file did not contain documents pertaining to confidential medical information or complaints of discrimination. Director Grimaldi referred Mone's discrimination complaint to UCS's Office of the Inspector General. (S.A. 47.) On September 17, the UCS Office of the Inspector General informed Mone that it did not have jurisdiction to investigate his complaint. (S.A. 49.)

On September 28, 2021, Mone was deemed unfit for service by UCS for failing to comply with the Vaccination Policy, and directed to leave the workplace. (S.A. 58.) On October 4, 2021, the New York State Court Officer Association obtained a temporary restraining order against enforcement of the Vaccination Policy. Mone returned to work on October 5, 2021, but sought and obtained leave for an unrelated injury beginning on October 7, 2021. (S.A. 23.) On October 15, 2021, the temporary restraining order was lifted. *See Civil Serv. Emps. Ass'n., Local 1000 v. New York State (Unified Ct. Sys.)*, 73 Misc. 3d 874, 899 (Sup. Ct. Albany Cnty.

2021). At some unspecified date thereafter, Mone was terminated. (S.A. 14-15.)

### 3. Mone files a complaint with the EEOC

On September 20, 2021, Mone filed a complaint with the EEOC against UCS alleging "discrimination . . . based upon disability." (S.A. 50.) Mone alleged that UCS "regards me as having a disability: a contagious disease" and has demanded that Mone accept various "accommodations" (including the vaccine), which Mone has refused because he never asked for them and did not need them "to perform the duties of my employment." (S.A. 50-51.) Mone further alleged that he was retaliated against when he refused to accept these accommodations by being "threaten[ed] . . . with disciplinary measures and penalties." (S.A. 52.)

The EEOC declined to investigate Mone's allegations, and on December 7, 2021, issued a right-to-sue letter to Mone. (S.A. 62.)

**B.** **The Proceedings Below**

**1.** **The allegations of the complaint.**

On December 10, 2021, Mone commenced this action against UCS in the United States District Court for the Eastern District of New York, alleging discrimination and retaliation in violation of the ADA. (A. 4-5.[1]) In his amended complaint, he alleged that he was a "qualified individual with disability because he was being regarded as disabled with a contagious disease by the defendant's policies and procedures." (S.A. 7.) He claimed that when he "chose not to accept the defendant's offered accommodations," UCS "retaliated against" him. (S.A. 8.) Mone pleaded two counts of discrimination for "perceived disability" and "interference/ retaliation" under the ADA and its amendments, and sought declaratory and injunctive relief as well as compensatory damages, punitive damages, and costs and expenses. (S.A. 9, 13, 16.)

---

[1] Because the Appellant's Appendix does not have page numbers, all Appendix citations in this brief refer to the page numbering imprinted by the electronic filing system.

8

## 2. The report and recommendation on UCS's motion to dismiss

UCS moved to dismiss Mone's claims, and on March 22, 2023, Magistrate Judge Lois Bloom issued a Report and Recommendation recommending that UCS's motion be granted.[2] (S.A. 107.) Judge Bloom first concluded that sovereign immunity barred Mone's claims under the ADA, because UCS was unquestionably an arm of the state to which sovereign immunity extends, and because neither had New York waived sovereign immunity for suits brought under the ADA, nor had Congress abrogated the States' sovereign immunity when it passed the ADA. (S.A. 92-95.)

Judge Bloom also construed Mone's Amended Complaint to assert claims under section 504 of the Rehabilitation Act,[3] 29 U.S.C. § 794, for which Congress abrogated the States' sovereign immunity, *see* 42 U.S.C.

---

[2] Magistrate Judge Bloom considered UCS's motions to dismiss filed in this action as well as the companion action, *Colleen Mone v. New York State Unified Court System*, No. 21-cv-6915 (E.D.N.Y. Dec. 10, 2021), together. (S.A. 84.)

[3] Although Mone first referenced the Rehabilitation Act in his papers opposing UCS's motion to dismiss, the court "liberally construe[d]" Mone's pleadings to assert Rehabilitation Act claims given his pro se status. (S.A. 95-96 n.13.)

§ 2000d-7, and dismissed those claims for failure to state a claim. (S.A. 95-96.) The report concluded that Mone had failed to state a discrimination claim under the Rehabilitation Act because he had failed to plausibly allege that he was "disabled" within the meaning of that statute, either on the theory that he was "regarded as" disabled by UCS or on the theory that he had a "record of impairment" that substantially limited one or more major life activities. (S.A. 98-102.) The report then concluded that Mone had failed to state a retaliation claim under the Rehabilitation Act. (S.A. 103-106.) The temporal proximity of his termination to the EEOC complaint he had filed, standing alone, was insufficient to support such a claim. (S.A. 105-106.)

Finally, Judge Bloom recommended denying leave to amend in connection with her recommendation of dismissal, reasoning that Mone had already been given one opportunity to amend and could not state claims upon which relief could be granted, and thus it was clear that any attempt to amend the complaint would be futile. (S.A. 106.)

### 3.    The district court's order

Mone filed objections to the Magistrate's Report and Recommendation. (A. 10.) On June 20, 2023, after reviewing the Report and Recommendation de novo, the District Court (Gujarati, J.) concluded that Judge Bloom "properly concluded that Defendant's Motions to Dismiss should be granted and that Mone should not be granted leave to further amend," adopted the Report and Recommendation in full, and directed the clerk to enter judgment for UCS. (A. 14-15.)

## STANDARD OF REVIEW

This Court reviews de novo a district court's dismissal pursuant to Rule 12(b)(1) or (6) of the Federal Rules of Civil Procedure, accepting all factual allegations in the complaint as true. *See Absolute Activist Value Master Fund Ltd. v. Ficeto*, 677 F.3d 60, 65 (2d Cir. 2012). "To survive a motion to dismiss [pursuant to Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted).

11

## SUMMARY OF ARGUMENT

I.    The district court properly dismissed Mone's claims under Title I of the ADA on Eleventh Amendment immunity grounds. Under settled Supreme Court case law, Title I of the ADA does not abrogate sovereign immunity. Mone, whose claims arise solely under Title I, misplaces his reliance on cases pertaining to abrogation of immunity for claims arising under Title II. Meanwhile, with respect to Mone's claims for injunctive relief under Title I, Mone cannot invoke the doctrine of *Ex Parte Young*, 209 U.S. 123 (1908), because he has failed to name a proper state official as a defendant for such a claim.

II.    The district court properly dismissed Mone's claims for discrimination and retaliation under section 504 of the Rehabilitation Act for failure to state a claim upon which relief can be granted.

A.    Mone's claim for discrimination is defective because he has failed to allege that he has a disability. First, he has not sufficiently pleaded that he was "regarded" by UCS as having a disability by virtue of refusing to be vaccinated. Second, Mone fails to plead that UCS had a "record of" his having a disability by maintaining records of his unvaccinated status, because being recorded as "unvaccinated" does not indicate

12

one way or the other that a plaintiff has a disability. Mone also fails to allege how the misclassified impairment substantially limited one or more major life activities.

B.     Mone also fails to plausibly allege that his termination was retaliatory. UCS's vaccination policy itself stated that employees could face termination for noncompliance, and Mone's opposition to the policy occurred after the policy was issued. The circumstances make clear that Mone was terminated for a substantive violation of the policy itself, not out of retaliation for opposing the policy.

## ARGUMENT

### POINT I

#### THE DISTRICT COURT CORRECTLY CONCLUDED THAT MONE'S CLAIMS UNDER THE ADA WERE BARRED BY THE ELEVENTH AMENDMENT

The Eleventh Amendment states that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens of Subjects of any Foreign State." U.S. Const., amend. XI. In addition to suits by foreign citizens, it has been interpreted also to bar federal suits against state governments by a

13

state's own citizens. *See Woods v. Rondout Valley Cent. Sch. Dist. Bd. of Educ.*, 466 F.3d 232, 236 (2d Cir. 2006) (citing *Hans v. Louisiana*, 134 U.S. 1, 15 (1890)). It has also been interpreted to extend "beyond the states themselves to 'state agents and state instrumentalities' that are, effectively, arms of a state." *Id.* (quoting *Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997)).

Accordingly, unless the State has waived its immunity to suit or Congress has otherwise abrogated the States' Eleventh Amendment immunity when acting pursuant to its authority under Section 5 of the Fourteenth Amendment, *id.*, a claim against a State or its instrumentality (such as UCS)[4] is barred by the Eleventh Amendment. The district court correctly found that the Eleventh Amendment bars Mone's ADA claims here.

---

[4] It is undisputed that UCS is an arm of the State. *See, e.g.*, *Gollomp v. Spitzer*, 568 F.3d 355, 368 (2d Cir. 2009) (holding that "the New York State Unified Court System is unquestionably an arm of the State, and is entitled to Eleventh Amendment sovereign immunity" (quotation marks and citation omitted) (quoting *Woods*, 466 F.3d at 236)).

14

**A.    Congress Did Not Abrogate the States' Eleventh Amendment Immunity for Claims Under ADA Title I.**

"Congress may abrogate the States' Eleventh Amendment immunity when it both unequivocally intends to do so and 'act[s] pursuant to a valid grant of constitutional authority.'" *Board of Trs. of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001) (quoting *Kimel v. Florida Bd. of Regents*, 528 U.S. 62, 73 (2000)). As to the ADA, "the first of these requirements is not in dispute." *Id*. at 363-64.

In *Garrett*, the Supreme Court held that Congress's attempt to abrogate States' Eleventh Amendment immunity in 42 U.S.C. § 12202 was not authorized by the Constitution for claims brought under Title I of the ADA. *Id*. at 360. The Court held that Congress could only subject nonconsenting States to suit in federal court when it did so pursuant to a valid exercise of its power under Section 5 of the Fourteenth Amendment. *Id*. at 364. Section 5 abrogation requires that Congress identify "a history and pattern of unconstitutional employment discrimination by the States against the disabled," and fashion a "remedy" that is "congruent and proportional to the targeted violation," both of which Congress had failed to do. *Id*. at 368, 374. This Court has regularly applied *Garrett* to bar claims for damages against a state under Title I of

15

the ADA. *See, e.g.*, *Dimps v. Taconic Corr. Facility*, 802 F. App'x 601, 603 (2d Cir. 2020); *Baez v. New York*, 629 F. App'x 116, 118 (2d Cir. 2015); *Nicolae v. Office of Vocational & Educ. Servs. for Individuals with Disabilities*, 257 F. App'x 455, 456 (2d Cir. 2007).

Mone suggests that *Garrett* merely "establishes the conditions under which . . . monetary damages may be pursued," and then argues that he has satisfied those conditions. Appellant's Opening Br. (Br.) at 19-20. But *Garrett* expressly prohibits claims for damages against a state arising under Title I of the ADA. *See Garrett*, 531 U.S. at 360 ("We hold that such suits are barred by the Eleventh Amendment."). Mone thus cannot evade *Garrett* by suggesting that his particular claim establishes a "pattern of . . . abuse or discrimination," or seeks a "remedy" that is "aligned to the violation." Br. at 19.

The Supreme Court's decision in *Tennessee v. Lane*, 541 U.S. 509 (2004) (*see* Br. at 18), does not compel a contrary result. In *Lane*, the Court held that the ADA's abrogation of Eleventh Amendment immunity was valid as to claims brought under Title II of the ADA, which forbids the "exclu[sion] from participation in" or the "deni[al]" of the "benefits of

16

the services, programs, or activities of a public entity" on account of one's disability. *Lane*, 541 U.S. at 513 (quotation marks omitted).

But Mone's claim under the ADA arises solely under Title I, the part of that statute which prohibits employment discrimination on the basis of disability. (S.A. 9.) This Court has held that the ADA "unambiguously limits employment discrimination claims to Title I." *Mary Jo C. v. New York State & Loc. Ret. Sys.*, 707 F.3d 144, 171 (2d Cir. 2013). Accordingly, "[a] public employee may not bring a Title II claim against his or her employer" to avoid Eleventh Amendment immunity. *See id.*

In *Garrett*, the Supreme Court noted that the Eleventh Amendment does not bar actions for injunctive relief against States, under *Ex Parte Young*, 209 U.S. 123 (1908). *Garrett*, 531 U.S. at 374 n.9. But to take advantage of the *Ex Parte Young* doctrine, "a plaintiff seeking prospective relief from the state must name as defendant a state official rather than the state or a state agency directly." *Santiago v. New York State Dep't of Corr. Servs.*, 945 F.2d 25, 32 (2d Cir. 1991). Because Mone has not named any state officials here—despite already amending his complaint once— he cannot proceed with his claim for injunctive relief under the ADA. *See Palmer v. New York State Off. of Ct. Admin.*, 526 F. App'x 97, 99 (2d Cir.

17

2013) (dismissing claim for injunctive relief under Title I of ADA because plaintiff "neglected to name a state official acting in his or her official capacity as a defendant"). Mone has not asked this Court to remand to allow him to replead to correct this deficiency. Moreover, remand would be futile given that Mone has failed to state a claim for discrimination or retaliation under the ADA or Rehabilitation Act. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (request to replead should be denied where repleading would be futile). See *infra* at 24-35.

## B. New York Has Not Waived Its Eleventh Amendment Immunity for Actions Under Title I of the ADA.

Nor has New York waived its Eleventh Amendment immunity for claims brought under Title I of the ADA. A State waives Eleventh Amendment immunity only if it either "voluntarily invokes" federal court jurisdiction "or else if the State makes a clear declaration that it intends to submit itself" to federal court jurisdiction. *College Sav. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 675-76 (1999) (quotation marks omitted). Neither has occurred here.

First, contrary to Mone's arguments (*see* Br. at 14), UCS has not voluntarily invoked federal court jurisdiction by appearing in this action.

18

"It is now well established that merely appearing and defending on the merits does not constitute waiver of a state's eleventh amendment immunity." *Mohegan Tribe v. Connecticut*, 528 F. Supp. 1359, 1366-67 (D. Conn. 1982). *See, e.g.*, *McGinty v. New York*, 251 F.3d 84, 94 (2d Cir. 2001) (refusing to find State's participation in EEOC proceeding waived its Eleventh Amendment immunity in subsequent federal action); *College Sav. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.*, 131 F.3d 353, 365 (3d Cir. 1997), *aff'd*, 527 U.S. 666 (1999). Instead, "[w]aivers by litigation conduct depend on whether the state has made a voluntary change in behavior that demonstrates it is no longer defending the lawsuit and is instead taking advantage of the federal forum." *Board of Regents of Univ. of Wisc. Sys. v. Phoenix Int'l Software, Inc.*, 653 F.3d 448, 462 (7th Cir. 2011). For example, a state defendant may waive sovereign immunity by removing a case to federal court. *See Lapides v. Board of Regents of the Univ. Sys. of Ga.*, 535 U.S. 613, 620 (2002); *see also In re Charter Oak Assocs.*, 361 F.3d 760, 772 (2d Cir. 2004) (filing a proof of claim in a bankruptcy proceeding waives Eleventh Amendment immunity for certain counterclaims). UCS has not engaged in any such affirmative litigation conduct here.

Second, UCS's purported acceptance of funds pursuant to the ADA (*see* Br. at 14) does not effect a waiver of its Eleventh Amendment immunity to suit in federal court under that statute. Congress has provided that "[a] State shall not be immune under the Eleventh Amendment" for violations of certain enumerated statutes, as well as violation of "the provisions of any other Federal statute prohibiting discrimination by recipients of Federal financial assistance." 42 U.S.C. § 2000d-7(a)(1). But the ADA is not one of the statutes expressly listed in the foregoing provision, and federal courts have consistently held that the ADA does not fall within the residual clause of § 2000d-7(a)(1).[5]

---

[5] *See Sullivan v. Texas A&M Univ. Sys.*, 986 F.3d 593, 598-99 (5th Cir. 2021) (holding that "Title I of the ADA does not fall within the residual clause of § 2000d-7(a)(1)"); *Levy v. Kansas Dep't of Soc. & Rehab. Servs.*, 789 F.3d 1164, 1170 (10th Cir. 2015) (declining to find that § 2000d-7(a)(1)'s residual clause or reference to Rehabilitation Act operated to include ADA within its ambit); *Gary v. Georgia Dep't of Hum. Res.*, 323 F. Supp. 2d 1368, 1372 (M.D. Ga. 2004) ("The acceptance of federal funds does not constitute a state's waiver of Eleventh Amendment immunity for alleged violations of Title I of the ADA."); *Panzardi–Santiago v. University of P.R.*, 200 F. Supp. 2d 1, 9 (D.P.R. 2002) ("Panzardi does not direct the Court to any language in the ADA that represents an unequivocal indication by Congress that states in accepting funds, in general from the federal government, do so on condition that they have knowingly waived their Eleventh Amendment protection.").

In so holding, courts have noted that "Title I's substantive provisions prohibit discrimination by a wide range of entities, not just those receiving federal funding." *Sullivan*, 986 F.3d at 598; *accord Levy*, 789 F.3d at 1171 ("the ADA has a much broader focus than discrimination by recipients of federal financial assistance"). Because the ADA is not a statute that deals solely with discrimination by recipients of federal financial assistance, it falls outside the ambit of the residual clause.

Mone also contends that UCS has waived its Eleventh Amendment immunity by voluntarily subjecting itself to the requirements of the ADA, as evidenced by commitments expressed on its website. Br. at 14-15. But it has long been understood that the application of the ADA's substantive requirements to the States is a separate matter from the availability of private lawsuits to enforce those requirements. "Title I of the ADA still prescribes standards applicable to the States," and the federal government—unlike a private litigant—can sue a State to enforce those standards. *Garrett*, 531 U.S. at 374 n.9. But the Eleventh Amendment bars enforcement via suits by private citizens in federal court actions.

21

## POINT II

### THE DISTRICT COURT PROPERLY DISMISSED MONE'S REHABILITATION ACT CLAIMS

The district court also properly dismissed Mone's Rehabilitation Act claims. To the extent Mone's allegations can overcome sovereign immunity, they fail to state a claim.

### A. Mone's Putative Rehabilitation Act Claims—Which He Disavows on Appeal—May Be Subject to Eleventh Amendment Immunity.

While this Court has found that States may waive Eleventh Amendment immunity from claims under § 504 the Rehabilitation Act by accepting federal financial assistance, "[i]mmunity waiver" under this provision "is not without limit." *T.W. v. New York State Bd. of Law Exam'rs*, 996 F.3d 87, 92 (2d Cir. 2021). For example, this Court has rejected the argument that the UCS, as a whole, has waived its immunity under the Rehabilitation Act by accepting funding through that statute. *See id.* at 95. Instead, whether a claim against UCS is barred by the Eleventh Amendment is determined by identifying which entities within UCS receive federal funding at the time of the alleged violation; whether those entities are part of a broader department, agency, or other

22

instrumentality; and whether the challenged entity is also part of that broader department, agency, or instrumentality. *See id.* Here, because the magistrate judge's report liberally construed Mone's opposition to UCS's motion to dismiss his attempt to state a Rehabilitation Act claim, the parties did not have a full opportunity to brief which entities within UCS are the relevant entities for purposes of applying *T.W.* in this case. (*See* S.A. 95-97 nn.13-14.) Accordingly, should this Court conclude that Mone's Rehabilitation Act allegations would otherwise state a claim, UCS reserves all Eleventh Amendment arguments and asks that the matter be remanded without prejudice to UCS's assertion of sovereign immunity.

In any event, this Court need not address the Rehabilitation Act at all in this appeal. Despite the district court's liberal construal of Mone's complaint to assert claims under that statute (*see* S.A. 95 n.13), Mone appears to disavow any such claims in his opening brief (*see* Br. at 22 n.9 ("The District Court referred to Rehabilitation Act and the ADA equivalents, but it should be understood that Mone is suing under Title I ADA as the UCS is his employer.")). This Court may affirm the district court's dismissal of Mone's Rehabilitation Act claims for this reason alone. *See*

23

*American Atheists, Inc. v. Port Auth. of N.Y. & N.J.*, 760 F.3d 227, 233

n.3 (2d Cir. 2014) (refusing to consider argument raised in supplemental

briefing that had been expressly disavowed in party's opening brief and

at argument).

## B. Mone's Discrimination Claim Is Defective Because He Has Failed to Allege That He Has a Disability.

In any event, Mone fails to state a Rehabilitation Act claim. In order

to state a prima facie claim for discrimination under the Rehabilitation

Act, Mone was required to plead, among other things, that he was

"disabled" within the meaning of that statute.[6] *See Smith v. Hogan*, 794

F.3d 249, 253 (2d Cir. 2015). A person is "disabled" under the Rehabilita-

tion Act if: (a) he has a physical or mental impairment that substantially

limits one or more of his major life activities; (b) he has a record of such

an impairment; or (c) is regarded as having such an impairment. *See* 42

U.S.C. § 12102(1); 29 U.S.C. § 705(9)(B). Here, Mone alleges he is

---

[6] The elements of a discrimination claim under the ADA and section 504 of the Rehabilitation Act are identical. *See Lyons v. Legal Aid Soc'y*, 68 F.3d 1512, 1515 (2d Cir. 1995). Accordingly, even if Mone's ADA claims were not barred by sovereign immunity (see *supra* at 13-21), they would fail for the same reasons his Rehabilitation Act claims fail.

disabled because UCS "regarded" him as disabled and had a "record of" him as disabled. (S.A. 7.) Mone's pleading fails on both counts.

### 1. Mone's complaint fails to plead that UCS "regarded" him as having a disability.

Under the ADA and Rehabilitation Act, an individual is "regarded as" having a disability "if the individual establishes that he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment," provided that the impairment is not "transitory and minor" (i.e., having "an actual or expected duration of 6 months or less"). 42 U.S.C. § 12102(3).

Mone contends that he—and, indeed, every UCS employee—was regarded by UCS as having a disability "as long as they remained 'untreated' by the mitigation measures outlined in" the Vaccination Policy. Br. at 23. But merely being at risk of developing a condition "is insufficient to state a disability-discrimination claim under the ADA." *Chancey v. BASF*, No. 23-40032, 2023 WL 6598065, at *2 (5th Cir. Oct. 10, 2023) (rejecting claim under ADA that employer "regarded" employee

25

as disabled due to imposition of workplace COVID-19 policy).[7] Indeed, the imposition of a vaccine requirement is an effort to prevent the potential spread of an illness rather than to treat the illness itself. *See Williams-Moore v. Quick Int'l Courier, LLC*, No. 22-cv-3592, 2023 WL 6292540, at *4 (E.D.N.Y. Sept. 26, 2023). A "chorus of courts in this Circuit" has "conclude[d] that an employer's imposition of a COVID-19 vaccination requirement does not raise a plausible inference that the

_____

[7] As another district court recently noted in dismissing similar COVID-19 related claims brought under the ADA, "every circuit court that has addressed the issue has concluded that the ADA does not prohibit discrimination based on *future* impairments." *D'Cunha v. Northwell Health Sys.*, No. 1:22-cv-0988, 2023 WL 2266520, at *5 n.5 (S.D.N.Y. Feb. 28, 2023); *see Darby v. Childvine, Inc.*, 964 F.3d 440, 446 (6th Cir. 2020) ("[A] genetic mutation that merely predisposes an individual to other conditions . . . is not itself a disability under the ADA."); *Shell v. Burlington N. Santa Fe Ry.*, 941 F.3d 331, 336 (7th Cir. 2019) ("[T]he [ADA's] text plainly encompasses only current impairments, not future ones."); *Morriss v. BNSF Ry.*, 817 F.3d 1104, 1113 (8th Cir. 2016) ("[T]he ADA does not prohibit an employer from acting on some other basis, *i.e.,* on its assessment that although no physical impairment currently exists, there is an unacceptable risk of a future physical impairment."); *Equal Emp. Opportunity Comm'n v. BNSF Ry.*, 902 F.3d 916, 923 (9th Cir. 2018) (The ADA "prohibits discrimination on the basis of an 'actual or perceived impairment' in the present tense." (citation omitted)); *Equal Emp. Opportunity Comm'n v. STME, LLC*, 938 F.3d 1305, 1315 (11th Cir. 2019) ("[W]e must conclude that the disability definition in the ADA does not cover this case where an employer perceives a person to be presently healthy with only a potential to become ill and disabled in the future.").

26

employer regarded all its employees (or its unvaccinated employees) as disabled within the meaning of the ADA." *Williams-Moore*, 2023 WL 6292540, at *4 (collecting cases).

Mone attempts to avoid these cases by arguing that UCS "perceived him [as] a *direct threat* and wanted him to get treatment for the perceived impairment." Br. at 24 (emphasis added). Mone also contends that neither he nor any of his colleagues was subject to an "individualized risk assessment" to establish that any UCS employee was a threat to others at the workplace. Br. at 23. But Mone's invocation of terms like "direct threat" and "individualized risk assessments" is unavailing.

The ADA provides that it may be "a defense to a charge of discrimination" that an employer's "qualification standards" that would tend to exclude an individual with a disability are "job-related and consistent with business necessity," and defines "qualification standard[]" to include "a requirement that an individual shall not pose a direct threat to the health and safety of other individuals in the workplace." 42 U.S.C. § 12113(a)-(b). The determination that an individual poses a "direct threat" must be "based on an individualized assessment of the individual's present ability to safely perform the essential functions of the job,"

27

based on "a reasonable medical judgment that relies on the most current medical knowledge and/or on the best available objective evidence." 29 C.F.R. § 1630.2(r). But these provisions describe an affirmative defense available upon a cognizable claim of discrimination under the ADA. *See* 42 U.S.C. § 12113(a)-(b); *Hargrave v. Vermont*, 340 F.3d 27, 35 (2d Cir. 2003); *Librandi v. Alexion Pharms., Inc.*, No. 3:22-cv-1126, 2023 WL 3993741, at *10 (D. Conn. June 14, 2023) ("direct threat" regulation is "inapplicable" where plaintiff has failed to plead facts showing that she is an "individual with a disability"). Moreover, "rules established by the EEOC make clear that the 'poses a direct threat defense' is meant to be applied in cases alleging discriminatory application of qualification standards as opposed to cases in which a plaintiff alleges 'disparate treatment.'" *Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161, 171 (2d Cir. 2006). Because Mone has failed to plead that he was disabled within the meaning of the ADA (or Rehabilitation Act), or that he was the victim of the discriminatory application of qualification standards, whether he could be considered a "direct threat" within the meaning of § 12113(b), and any "individualized assessment" needed to reach that determination, are irrelevant.

28

### 2. Mone's complaint fails to plead that he had a "record of" having a disability.

"An individual has a record of a disability if the individual has a history of, or has been misclassified as having, a mental or physical impairment that substantially limits one or more major life activities." 29 C.F.R. § 1630.2(k)(1). Mone contends that he has been "misclassified" as being "substantially impaired" by UCS under this provision, and therefore has sufficiently pleaded a "record of" a disability within the meaning of the ADA. Br. at 26; *see also id.* at 24 (noting that UCS "maintained records of 'vaccine status'" and "kept records of who received" vaccines). Mone is mistaken.

For one, "a notation that Plaintiff is 'unvaccinated' does not indicate that Defendant recorded Plaintiff as having a disability." *Librandi*, 2023 WL 3993741, at *7 (quoting *Linne v. Alameda Health Sys.*, No. 22-cv-04981, 2023 WL 3168587, at *2 (N.D. Cal. Apr. 28, 2023)). As Magistrate Judge Bloom noted, these policies applied to all employees. (S.A. 101.) And while Mone suggests that the universality of the policies is prima facie evidence of their irrationality (Br. at 24-26), it is also evidence that they are nondiscriminatory, and a claim under the Rehabilitation Act or ADA fails in the absence of discrimination. *See, e.g.*, *Davis v. New York*

29

*City Dep't of Educ.*, 804 F.3d 231, 235 (2d Cir. 2015) (plaintiff alleging discrimination under ADA must show that "adverse action was imposed because of her disability").

Mone also fails to allege how the disability with which he was misclassified "substantially limit[ed] one or more major life activities." 29 C.F.R. § 1630.2(k)(1), as the court below found. (S.A. 101-102.) Mone does not dispute this failure on appeal; instead, he contends that he was "not required to allege that the (perceived) impairment substantially limited him." Br. at 26 & n.13. But this misreads the applicable regulation. "An individual will be considered to have a record of a disability if the individual has a history of *an impairment that substantially limited one or more major life activities* when compared to most people in the general population, or was *misclassified* as having had *such an impairment*."[8] 29 C.F.R. § 1630.2(k)(2) (emphasis added). Thus, regardless of whether Mone "is proceeding under a classification or a

---

[8] In the context of a statute or regulation, "when 'such' precedes a noun it is assumed to refer to a particular antecedent noun and any dependent adjective or adjectival clauses modifying that noun, but not to any other part of the preceding clause or sentence." *General Elec. Co. v. Bucyrus-Erie Co.*, 550 F. Supp. 1037, 1042 n.7 (S.D.N.Y. 1982).

misclassification theory, the record-of-impairment standard is satisfied only if [he] actually suffered a physical impairment that substantially limited one or more of her major life activities." *Hilburn v. Murata Elecs. of N. Am., Inc.*, 181 F.3d 1220, 1229 (11th Cir. 1999). That is, the misclassified "impairment indicated in the record must be an impairment that would substantially limit one or more of the individual's major life activities." *Id. (*quoting 29 CFR § 1630.2(k)); *see also Jorgenson v. Conduent Transp. Sols., Inc.*, No. 22-cv-01648, 2023 WL 1472022, at *4 (D. Md. Feb. 2, 2023) (dismissing claim that defendant misclassified and made a record of plaintiff as unvaccinated, because plaintiff "alleged no facts indicating that [defendant] classified him as having any impairment that limits a major life activity").

Mone's failure to explain how the "record of" his unvaccinated status, or his "record of" being a "direct threat" to other employees, amounted to a misclassification that he had an impairment that substantially limited one or more major life activities is thus fatal to his Rehabilitation Act discrimination claims.

31

**C.    Mone's Retaliation Claim is Defective Because He Has Failed to Plausibly Allege That His Termination Was Retaliatory.**

To state a claim for retaliation under the ADA (and the Rehabilitation Act), a plaintiff must plausibly allege that "(i) [the] plaintiff was engaged in protected activity; (ii) the alleged retaliator knew that plaintiff was involved in protected activity; (iii) an adverse decision or course of action was taken against plaintiff; and (iv) a causal connection exists between the protected activity and the adverse action." *Tafolla v. Heilig*, 80 F.4th 111, 125 (2d Cir. 2023) (quotation marks omitted). Here, Magistrate Judge Bloom found that Mone had failed to plausibly allege that his termination was caused by any "protected activity" on his part, since the protected activity he had alleged—the September 20, 2021, filing of his EEOC charge—post-dated the issuance of the Vaccination Policy warning all employees (not just Mone) that noncompliance with the policy could lead to termination. (S.A. 104-106.) This conclusion should be affirmed.

As the court below noted, causation may be established at the prima facie stage "by showing that the protected activity was followed closely by discriminatory treatment." (S.A. 104.) *See also Gordon v. New York*

*City Bd. of Educ.*, 232 F.3d 111, 117 (2d Cir. 2000). However, where the protected activity occurs when plaintiff is already "at risk of being disciplined" for reasons unrelated to engaging in the protected activity, the plaintiff cannot "rely solely on temporal proximity" to establish retaliation. *Catanzaro v. City of New York*, No. 10-cv-1825, 2011 WL 335648, at *7 (S.D.N.Y. Jan. 25, 2011), *aff'd*, 486 F. App'x 899 (2d Cir. June 27, 2012); *see Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 95 (2d Cir. 2001). Here, Mone does not even allege exactly when he was terminated (see *supra* at 7), and therefore has not adequately pleaded temporal proximity. Moreover, his complaint is devoid of allegations of "retaliatory animus directed against the plaintiff by the defendant," or of any "disparate treatment" of similarly situated employees. (S.A. 104.)

Mone contends that his "protected activity" occurred earlier than his September 20, 2021, EEOC charge—specifically, that he sent a letter to Judge Marks on September 8, 2021, opposing the Testing Policy two days before the Vaccination Policy was issued on September 10. Br. at 27. But Mone's allegations are that he was terminated for violating the

Vaccination Policy, not the Testing Policy.[9] (S.A. 14, 22.) And whether his protected activity occurred on September 10 or September 20, his termination process evidently began on September 28, 2021, the day after the policy went into effect, when he was deemed "unfit" for service due to his noncompliance with the policy and excluded from the workplace. The only plausible inference from his allegations was that he was terminated for failing to comply with the Vaccination Policy, *not* for opposing it. *See Sharikov v. Philips Med. Sys. MR, Inc.*, No. 22-cv-00326, 2023 WL 2390360, at \*14 (N.D.N.Y. Mar. 7, 2023) (defendant's COVID-19 policy was "undisputedly the grounds for [Plaintiff's] termination when [he] chose to remain unvaccinated" and "spoke up in opposition to the vaccination requirement" after the policy was issued); *Johnson v. Mount Sinai Hosp. Grp., Inc.*, No. 22-cv-2936, 2023 WL 2163774, at \*7 (E.D.N.Y. Feb. 22, 2023) (same); *Jorgenson*, 2023 WL 1472022, at \*6 (same); *Shklyar v. Carboline Co.*, 616 F. Supp. 3d 920, 927 (E.D. Mo. 2022) (same).

---

[9] In fact, the Vaccination Policy appears to have been announced prior to September 10, 2021. In Mone's September 8 email to Judge Marks, he "addresses the court of administration's unconstitutional vaccine mandate slated to begin September 27, 2021." (S.A. 46.)

34

Indeed, Mone's contention that he was terminated *both* "because of his opposition" to the Vaccination Policy "and simultaneous non-compliance" (Br. at 28) is fatal to his retaliation claim. With respect to causation, a plaintiff must prove "that *but for* the disability, the adverse action would not have been taken." *Natofsky v. City of New York*, 921 F.3d 337, 347 (2d Cir. 2019) (emphasis added) (quotation marks omitted). This "but-for" standard applies equally to retaliation claims under the ADA and Rehabilitation Act. *See Tafolla*, 80 F.4th at 125-26. Where the plaintiff has alleged that he was terminated *both* for opposing a policy for protected reasons under the Rehabilitation Act *and* for failing to comply with the policy, then his protected activity could not have been the "but-for" cause of his termination. In other words, since Mone would have been terminated even had he not engaged in any protected activity, he cannot state a claim for retaliation under the ADA.

Finally, Mone does not challenge the district court's denial of leave to further amend his complaint in his opening brief. Accordingly, he has waived any such challenge. *See United States v. Diaz*, 967 F.3d 107, 111 n.4 (2d Cir. 2020).

# CONCLUSION

For all of the foregoing reasons, the district court's judgment should

be affirmed.

Dated:   New York, New York
        October 25, 2023

                                    Respectfully submitted,

                                    LETITIA JAMES
                                       *Attorney General*
                                       *State of New York*
                                    Attorney for Appellee


                              By:   */s/ Andrea W. Trento*
                                    ANDREA W. TRENTO
                                    Assistant Solicitor General

BARBARA D. UNDERWOOD              28 Liberty Street
   *Solicitor General*            New York, NY 10005
MATTHEW W. GRIECO                 (212) 416-8656
   *Senior Assistant Solicitor General*
ANDREA W. TRENTO
   *Assistant Solicitor General*
      *of Counsel*

36

## CERTIFICATE OF COMPLIANCE

Pursuant to Rule 32(a) of the Federal Rules of Appellate Procedure, Emily Paule, an employee in the Office of the Attorney General of the State of New York, hereby certifies that according to the word count feature of the word processing program used to prepare this brief, the brief contains 7,000 words and complies with the typeface requirements and length limits of Rule 32(a)(5)-(7) and Local Rule 32.1.

 /s/ *Emily Paule*

## CERTIFICATE OF SERVICE

I hereby certify that, on October 25, 2023, I served or caused to be served two copies of the accompanying brief by United States Postal Service first class/priority mail upon the following named person(s):

Chris Mone
1216 Yawl Way
Venice, FL 34285

_/s/  Andrea W. Trento_